IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. **10- cr-30053-01-MJR** |
| ) | |
| **JUDIOUS KIZEART**, ) | |
| ) | |
| Defendant. ) | |

# ORDER

**REAGAN, District Judge:**

Before the Court is Defendant Judious Kizeart's motion to dismiss the indictment based on the "outrageous Government misconduct" doctrine (Doc. 145). The Government filed a response in opposition to the motion (Doc. 160), and an evidentiary hearing was conducted April 1, 2011. For the reasons detailed below, Defendant Kizeart's motion to dismiss (Doc. 145) is **DENIED**.

On March 18, 2010, Defendant Judious Kizeart, along with six others, was named in a one-count indictment (Doc. 1) charging a conspiracy under 18 U.S.C. § 371 to commit dog fighting, in violation of 7 U.S.C. § 2156(a)(1) (sponsoring or exhibiting an animal in a fighting venture) and § 2156(b)[1] (buying, selling, delivering, possessing, training or transporting an animal for participation in a fight). Specific to Kizeart, it is alleged that:

    1.    On or about March 22, 2009, in East St. Louis, Kizeart was asked,

---

[1] The indictment cites "2156(a)(2)(b)," rather than "2156(b)." Such typographical errors in an indictment are generally deemed benign, not altering the substance of the charged offense. *See U.S. v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994); *Russell v. United States*, 369 U.S. 749, 770 (1962) ("mere matters of form" need not be resubmitted to the grand jury).

1

>               and he agreed to handled a dog during a fight.  **Doc. 1, p. 4, ¶¶ 22-24.**
>
>     2.      On or about April 18, 2009, in East St. Louis, Kizeart was a spectator
>             and he placed bets on dog fights.  **Doc. 1, pp. 4-5, ¶¶ 26-27.**

Kizeart concedes that the Seventh Circuit does not recognize the doctrine.  The Government would have the Court adhere to Seventh Circuit precedent and reject the doctrine.  In the alternative, the Government asserts that its agents' conduct was "rationally tailored to the needs of the investigation."

The testimony presented establishes that Missouri Highway Patrol agents (at times working in concert withe the FBI) and their confidential informants, trained fight dogs, promoted and participated in dog fights, and observed a dog die– all as part of an undercover operation to infiltrate the closed world of dog fighting.  Historically, Missouri law enforcement had had little success prosecuting dog fighters due to difficulty obtaining sufficient evidence of precisely how dogs had been injured. According to an official with the Humane Society of St. Louis, Society officials met with law enforcement and generally endorsed the Missouri Highway Patrol's efforts to infiltrate the closed and secretive dog fighting community, although the Society was unaware of exactly how involved the Government agents would eventually become in the fights.[2]  The investigation expanded from Missouri into the neighboring Southern District of Illinois, where

---

[2]Government agents, and the confidential informants they worked with, did purchase dogs from within the dog fighting community, but they did <u>not</u> obtain any dogs from the Humane Society or any other outside source, such as a pet store; nor were stray dogs used by the Government.  Dogs that were rotated through the undercover operation's "show" kennel were turned over to the Humane Society.  At times, the agents were able to extricate a dog from a fight or training round without arousing suspicion, but not always.  After each fight, the agents had the dogs inspected by Humane Society workers, who ensured the dogs' injuries were treated.  Humane Society workers went so far as to take some of the dogs from the agents.

Defendant Kizeart was allegedly involved. The undercover operation lasted for approximately 18 months, culminating in the arrest and prosecution of almost 100 individuals- some as misdemeanors, others as felonies.

Kizeart contends that there were other methods of investigating and infiltrating the dog fighting world. From Kizeart's perspective, the Government's conduct, in terms of time, involvement and consequences, was worse than his own limited involvement. Kizeart envisions a slippery slope, where permitting this sort of conduct leads to agents filming themselves raping a child, putting it on the internet, and then arresting internet spectators, while the agents go unpunished (*see* Doc. 145, p. 5).

In *U.S. v. Russell*, 411 U.S. 423 (1973), the United States Supreme Court speculated, "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction...." ***Id*. at 431-432 (citing *Kinsella v. U.S. ex rel. Singleton*, 361 U.S. 234, 246 (1960), for the proposition that due process forbids the denial of "'fundamental fairness, shocking to the universal sense of justice.'" (quoting *Betts v. Brady*, 316 U.S. 455, 462 (1942)).** That statement in *Russell* spawned the "outrageous Government misconduct" defense now asserted by Defendant Kizeart. In *Russell* the Supreme Court recognized that such a defense is based on "the reluctance of the judiciary to countenance 'overzealous law enforcement.'" ***Russell*, 411 U.S. at 428 (internal citations omitted).** However, the Supreme Court explained that any analogy to recognized exclusionary rules stem from the Government's conduct violating the independent rights of the defendant (e.g. *Mapp v. Ohio*, 367 U.S. 643 (1961) (re search and seizure); and *Miranda v. Arizona*, 384 U.S. 436 (1966) (re confessions)). ***Russell*, 411 U.S. at**

3

430.

The Court of Appeals for the Seventh Circuit has bluntly stated, "the doctrine does not exist in this circuit. The gravity of the prosecutors' misconduct is relevant only insofar as it may shed light on the materiality of the infringement of the defendants' rights...." **U.S. v. Boyd, 55 F.3d 239, 241 (7th Cir. 1995).** The appellate court explained, "the Supreme Court has told us that we are not to reverse convictions in order to punish prosecutors. *United States v. Hasting,* 461 U.S. 499, 506-07, 103 S.Ct. 1974, 1979-80, 76 L.Ed.2d 96 (1983). Prosecutorial misconduct may precipitate a reversible error, but it is never in itself a reversible error. *United States v. Van Engel,* 15 F.3d 623, 631 (7th Cir.1993)." ***Id.*** "If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law." **Hampton v. U.S., 425 U.S. 484, 490 (1976) (citations omitted).**

Defendant Kizeart cites cases from every circuit–except the Seventh and D.C. Circuits– recognizing the "outrageous Government misconduct" doctrine. However, Kizeart neglects to mention that in <u>none</u> of the cited cases was the indictment dismissed due to outrageous Government misconduct.

Defendant Kizeart does not claim any sort of improper inducement, entrapment or violation of his rights. Rather, Kizeart contends that it would be unfair to punish him when the Government agents' conduct training, promoting and participating in dog fights– and the related loss of dogs– is far worse behavior. It was not disputed that Kiezeart's involvement was relatively minimal. At most, Kizeart fought a dog with coaching from the dog's owner, while all others in the indictment maintained kennels of fighting dogs.

4

If the Court would characterize the Government's actions in this situation as "outrageous Government misconduct," under both Seventh Circuit precedents and *Hampton v. U.S.*, 425 U.S. 484, 490 (1976), dismissal of the complaint is inappropriate; rather, legal action should be pursued against the offending Government agent(s). There may be some theoretical circumstance where there was outrageous Government misconduct and no other apparent legal or ethical remedy, which would then warrant the dismissal of an indictment. However, that circumstances has yet to appear, even in circumstances endangering human life. In *U.S. v. Barbosa*, 271 F3d 438 (3rd Cir. 2001), cited in Kizeart's motion, the Government used a "swallower" in a drug trafficking sting, obviously placing the swallower's life in danger– the indictment was not dismissed. Similarly, in *U.S. v. Sherman*, 268 F.3d 539 (7th Cir. 2001), the Seventh Circuit, although outraged by the Government possessing and disseminating child pornography on the internet, refused to recognize the defense of outrageous Government misconduct. ***Id*. at 548-549.** Law enforcement agents are under no obligation to stop an investigation the minute they have sufficient evidence to establish probable cause. *Hoffa v. U.S.*, **385 U.S. 293, 310 (1966).**

**IT IS THEREFORE ORDERED** that Defendant Judious Kizeart's motion to dismiss the indictment based on the "outrageous government misconduct" doctrine (Doc. 145) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: April 4, 2011**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**